IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN DAVIS, | ) |
| | ) No. 2:23-cv-1975 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Robert J. Colville |
| | ) |
| THE ALBERT M. HIGLEY COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is a Motion to Dismiss (ECF No. 15) filed by Defendant the Albert M. Higley Company, LLC. Defendant seeks dismissal with prejudice of the claims set forth in the operative Amended Complaint (ECF No. 13) filed by Plaintiff Brian Davis. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). Defendant's Motion has been fully briefed and is ripe for disposition.

**I.   Factual Background**

Plaintiff asserts claims against Defendant for wrongful failure to hire in violation of Pennsylvania's Medical Marijuana Act, 35 P.S. § 10231.101 et seq., ("MMA") (Count I) and for disability discrimination – failure to accommodate – in violation of the Pennsylvania Human Relations Act, 43 Pa. Stat. § 954, ("PHRA") (Count II). In the Amended Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motion at issue:

In late January of 2023, Defendant offered Plaintiff employment as a "Project Engineer." Am. Compl. ¶ 7, ECF No. 13. This offer of employment was contingent on the successful

completion of a pre-employment drug screen. *Id.* at ¶ 11. A Project Engineer does not handle or touch energized electrical equipment, does not work with chemicals that require a permit by any governmental agency, does not operate or physically control high voltage electricity or any other public utility, and does not encounter any life-threatening activities or risks to public health or safety. *Id.* at ¶ 8. When discussing the Project Engineer position with Defendant, Plaintiff explained that his then-current role as an "Estimator" with his then-current employer involved office work 80% of the time and field work 20% of the time. *Id.* at ¶ 9. Defendant informed Plaintiff that the role of Project Engineer would require comparatively more office time than his then-current role, that is, the new role would involve more than 80% office time and less than 20% field work. *Id.* On February 2, 2023, i.e., after receiving an offer of employment from Defendant, Plaintiff provided his then-current employer with a notice of resignation. *Id.* at ¶ 10.

Plaintiff has been diagnosed with anxiety, depression, and ADHD. Am. Compl. ¶¶ 12, ECF No. 13. These conditions substantially limit one or more of Plaintiff's major life activities, including his ability to sleep, think, and concentrate. *Id*. at ¶ 13. Plaintiff has been certified to use medical marijuana to treat these conditions, and he is also prescribed Prozac and Adderall. *Id.* at ¶ 15. On February 2, 2023, Plaintiff notified two of Defendant's employees of his diagnoses and prescribed medications, including medical marijuana, and further informed these individuals of his status as a medical marijuana identification cardholder. *Id.* at ¶ 16.

On February 10, 2023, Defendant underwent his pre-employment drug screen. Am. Compl. ¶ 17, ECF No. 13. On February 21, 2023, Plaintiff received an email from Defendant informing Plaintiff that Defendant had received the results of Plaintiff's drug screen. *Id.* at ¶ 18. By way of this email, Defendant requested that Plaintiff submit a memorandum, on his medical provider's letterhead with an ink signature, listing or stating:

> a. [T]he estimated THC level that the prescription should result in for the patient[;]
>
> b. [T]hat this prescribed amount will not impair a person so that they cannot drive a car safely[; and]
>
> c. [T]hat this prescribed amount will not impair a person so that they cannot conduct safety sensitive career tasks in the construction industry such as climbing ladders, walking on scaffolding, etc.

*Id.* On the same date, Plaintiff signed an offer of employment with Defendant, but Defendant stated that the offer remained contingent on the results of Plaintiff's drug screen. *Id.* at ¶ 19. At some point, Plaintiff expressed an understanding to Defendant that the position of "Project Engineer" did not involve "operating heavy machinery nor driving, climbing ladders, walking on scaffolding, etc.," and no employee of Defendant disabused him of that expressed understanding. *Id.* at ¶ 22.

On February 23, 2023, Plaintiff sent an email to Defendant explaining that he spoke to his healthcare provider and that:

> [The healthcare provider] will not be able to provide a detailed description of the THC levels since they do not prescribe specific amounts. She is, however, able to state that we have discussed safe and appropriate use, including my understanding of not operating heavy machinery nor driving, climbing ladders, walking on scaffolding, etc., along with my expression of commitment to safe use.

Am. Compl. ¶ 20, ECF No. 13. Plaintiff asked Defendant if these representations constituted a sufficient response to their request for a memorandum. *Id.* Plaintiff received a responsive email the next day, which provided:

> We are consulting with internal and external resources to make a decision that balances our concerns. Until we do that, we cannot establish a start date or guarantee you the position.

*Id.* at ¶ 21.

On March 1, 2023, Plaintiff emailed Defendant stating that he would be willing to sign an agreement providing that he would:

> refrain from any/all cannabis usage during business (or scheduled work) hours and at any/all times not within these hours in which [he] potentially could find [himself] under the influence, following prior such usage.

Am. Compl. ¶ 23, ECF No. 23.  Approximately ten minutes after Plaintiff sent his March 1, 2023 email, Defendant emailed Plaintiff to inform him that Defendant had decided to rescind its offer of employment.  *Id.* at ¶ 24.  Defendant did not respond to Plaintiff's offer to sign an agreement to not use medical marijuana or be under the influence during working hours.  *Id.* at ¶ 27.  The job offer was formally rescinded later that morning, with Defendant stating: "After careful consideration, this decision was made due to your drug screen and reported levels considered unsafe in our work environment per Pennsylvania law."  *Id.* at ¶ 25.  Despite Plaintiff's request for the results of his drug test, Defendant did not provide him with the results and instead referred him to Mobile Medical Corporation.  *Id.* at ¶ 28.

Plaintiff avers that, but for his status as a medical marijuana cardholder, Defendant would have hired him and would not have unlawfully rescinded its offer of employment.  Am. Compl. ¶ 26, ECF No. 13.  Plaintiff further avers that Defendant failed to make reasonable accommodations for Plaintiff's disabilities, specifically, anxiety, depression, and ADHD, and that it failed to discuss reasonable accommodations or engage in an interactive process with Plaintiff.  *Id.* at ¶¶ 37-38.  Plaintiff did not seek to use medical marijuana on Defendant's premises or any place of employment, nor did he seek to be under the influence of marijuana while at work.  *Id.* at ¶ 31.  Plaintiff has exhausted his administrative remedies under the PHRA.  *Id.* at ¶ 6.

Defendant filed its Motion to Dismiss and a Brief in Support (ECF No. 16) on January 10, 2024.  Plaintiff filed a Brief in Opposition (ECF No. 17) on January 31, 2024, and Defendant filed its Reply (ECF No. 18) on February 7, 2024.  After being granted leave, Plaintiff filed a Surreply (ECF No. 21) on February 12, 2024.  On April 24, 2024, Plaintiff filed a Notice of Supplemental

Authority (ECF No. 22).  Defendant filed a Response (ECF No. 26) to that Notice on May 15, 2024.

   II.     **Legal Standard**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Third Circuit explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This is also true where a plaintiff does not request leave to amend. *See Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a

defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

### III.   Discussion

Defendant argues that Plaintiff fails to state a claim under either the MMA or the PHRA. The Court will consider each claim in turn.

#### A.  MMA Claim (Count 1)

With respect to Plaintiff's claim under the MMA, Defendant asserts that Plaintiff has essentially pled himself out of court. Defendant argues that the MMA protects employees from adverse action *only* where such action is predicated *solely* upon the basis of the employee's cardholder status. Br. in Supp. 6-7, ECF No. 16. Defendant argues that the Amended Complaint makes clear that bases other than Plaintiff's status as a medical marijuana cardholder were also at the core of Defendant's decision to rescind its offer of employment. *Id.* at 7-8. More specifically, Defendant argues that Plaintiff fails to plead facts that plausibly establish that his status as a medical marijuana cardholder was the but-for cause of Defendant's failure to hire Plaintiff because he has set forth:

> [A] number of other factors which constitute other grounds for recission of the offer – namely, 1) the results of his drug test; 2) that he could not provide certification from his physician attesting to the THC level prescribed for him; 3) that he could not – or would not – provide certification from his physician attesting that the prescribed amount would not impair a person so that they could not drive a car safely; 4) that he could not – or would not – provide certification from his physician that the prescribed amount Plaintiff has pled that would not impair him in conducting safety sensitive career tasks in the construction industry.

*Id*.

Section 2103(b)(1) of the MMA provides that "[n]o employer may discharge, threaten, refuse to hire[,] or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's

7

status as an individual who is certified to use medical marijuana." 35 P.S. § 10231.2103(b)(1). Sections (b)(2) and (3) provide:

> (2) Nothing in this act shall require an employer to make any accommodation of the use of medical marijuana on the property or premises of any place of employment. This act shall in no way limit an employer's ability to discipline an employee for being under the influence of medical marijuana in the workplace or for working while under the influence of medical marijuana when the employee's conduct falls below the standard of care normally accepted for that position.
>
> (3) Nothing in this act shall require an employer to commit any act that would put the employer or any person acting on its behalf in violation of Federal law.

35 P.S. § 10231.2103(b)(2)-(3).[1] The United States District Court for the Eastern District of Pennsylvania has predicted that the Supreme Court of Pennsylvania would likely find an implied private right of action under Section 2103(b)(1) of the MMA. *See Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, 537 F. Supp. 3d 852, 861 (E.D. Pa. 2020); s*ee also Kopinetz v. Waste Mgmt. & Processors, Inc.*, 315 A.3d 138, 141 (Pa. Super. 2024) (Superior Court of Pennsylvania stating that it has "recognized the existence of an implied private right of action under Section 10231.2103(b)(1) of the MMA.").

The MMA is a Pennsylvania statute. Accordingly, decisions of Pennsylvania state appellate courts are integral to this Court's analysis. *See Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 289 (3d Cir. 2004) ("In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply existing state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. In the absence of such guidance, we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts

---

[1] Section 510 also sets forth employment tasks or duties that an employer may prohibit cardholder employees from performing while under the influence of marijuana. 35 P.S. § 10231.510.

that have addressed the issue." (citations omitted)).  In discussing the MMA, the Superior Court of Pennsylvania has notably explained:

> The enactment of the MMA in 2016 reflects a public policy designed to protect certified *users* of medical marijuana from employment discrimination and termination.  As the Supreme Court of Pennsylvania recognized in [*Gass v. 52nd Jud. Dist., Lebanon Cnty.*, 659 Pa. 590, 599 (Pa. 2020)] (quoting *State v. Nelson*, 346 Mont. 366, 195 P.3d 826, 833 (2008)), "[w]hen a qualifying patient uses medical marijuana in accordance with the MMA, he is receiving lawful medical treatment.  *In this context, medical marijuana is most properly viewed as a prescription drug*."

*Palmiter v. Commonwealth Health Sys., Inc.*, 260 A.3d 967, 977 (Pa. Super. 2021) (emphasis added).

More recently, the Superior Court of Pennsylvania issued a decision in *Kopinetz v. Waste Mgmt. & Processors, Inc.*, 315 A.3d 138 (Pa. Super. 2024), a case that, despite Defendant's assertions to the contrary, is directly on point with the instant matter.  In *Kopinetz*, the Superior Court reversed the trial court's decision sustaining preliminary objections filed by a defendant employer, concluding that "the trial court did not accept the complaint's factual allegations as true, but rather substituted its own judgment and decided a disputed factual issue against [the plaintiff]." *Id.* at 144.  In that case, the plaintiff employee alleged that his employer informed him that he had been terminated "because he lawfully *used* marijuana to treat his medical conditions." *Id.* at 140 (emphasis added).  The employer in *Kopinetz* made an identical argument to Defendant herein, that is, that the employer terminated the employee for a legitimate, non-discriminatory reason (a positive drug test and the *use* of marijuana), not *solely* on the basis the employee's cardholder status. *Id.* at 141.  In rejecting that argument, the Superior Court concluded that the timing of the employer's decision to terminate the employee, and on what theories it relied in terminating the employee, were ultimately issues of fact for the fact-finder's determination. *Id.* at 143.

9

Defendant seemingly advances an overly restrictive reading of the MMA, that, if adopted by the Court, may, potentially, permit adverse action based only upon a positive test for legal marijuana use. The Court notes, however, that the express language of Section 2103(b)(1) discusses not only cardholder status, but also the *use* of marijuana, providing that no adverse action can be taken "solely on the basis of such employee's status as an individual who is certified *to use medical marijuana*." 35 P.S. § 10231.2103(b)(1) (emphasis added). Perhaps more telling is Subsection (b)(2), which seemingly very deliberately lays out what the MMA permits with respect to an employee's *use* of marijuana:

> Nothing in this act shall require an employer to make any accommodation of the *use* of medical marijuana *on the property or premises of any place of employment*. This act shall in no way limit an employer's ability to discipline an employee for *being under the influence of medical marijuana in the workplace or for working while under the influence of medical marijuana when the employee's conduct falls below the standard of care normally accepted for that position*.

35 P.S. § 10231.2103(b)(2) (emphasis added); *see also* 35 P.S. § 10231.510. If the MMA per se permitted adverse employment action as to any employee who legally used or was under the influence of marijuana outside of the workplace, such a provision would be entirely superfluous. *See Callaghan v. Darlington Fabrics Corp.*, No. PC-2014-5680, 2017 WL 2321181, at *7 (R.I. Super. May 23, 2017) ("This Court finds it crucial that the statute does not say that nothing within the chapter would require an employer to accommodate the medical use of marijuana entirely. *Instead, it cabins that proscription to use 'in any workplace.'* The natural conclusion is that the General Assembly contemplated that the statute would, in some way, require employers to accommodate the medical use of marijuana *outside* the workplace. This provision undermines Defendants' contention that its actions did not violate the Hawkins-Slater Act because its refusal to hire Plaintiff was based not on her cardholder status, but her use of marijuana outside the workplace that prevented her from passing a drug test." (emphasis added) (citation omitted)).

10

As a practical matter, it seems to this Court that the MMA would be quite toothless if it only protected an employee's ability to possess a medical marijuana card, rather than the employee's ability to take the prescription medication that the card authorizes the individual to use.[2] Despite asserting to the contrary in its Reply, it is clear that Defendant intends, at this juncture, to argue that Plaintiff's *use* of marijuana alone, and not his status as a cardholder, justified Defendant's failure to hire Plaintiff. *See* Reply 3, ECF No. 18 ("Second, Plaintiff's focus on the employer's notice of the cardholder status (or lack thereof, in [*Reynolds v. Willert Mfg. Co.*, LLC, 567 F. Supp. 3d 553 (E.D. Pa. 2021)] illustrates a fundamental misunderstanding of the Act's plain language, namely, that 'status' must be the ***sole*** basis for the employer's adverse employment action for liability to attach."). In this Court's estimation, if Plaintiff's legal use of marijuana to treat his disabilities constitutes the basis for an adverse employment decision, the only logical conclusion that follows is that he has been subjected to adverse employment actions based upon his status as a Pennsylvania medical marijuana cardholder. *See Hudnell*, 537 F. Supp. 3d at 861 ("Accepted as true, Hudnell states facts that 'plausibly give rise to an entitlement to relief' under Section 2103(b)(1) of the MMA. She alleges she legally purchased and used medical marijuana, disclosed her status as a cardholder, failed a drug test at work[,] and then was fired the same day she recertified her medical marijuana card." (citation omitted)).

Defendant attempts to distinguish cases cited by Plaintiff by arguing that Defendant's reasons for termination other than cardholder status, i.e., a positive drug test and the failure to provide information as to his prescription, establish a basis other than cardholder status that support

---

[2] In interpreting materially similar language to the MMA, the Superior Court of Rhode Island provided: "If the Court were to interpret [the relevant statutory provisions] as narrowly as Defendants propose, Plaintiff and other medical marijuana users would be lumped together with nonmedical users of marijuana. The protections that [the relevant statutory provision] affords would be *illusory*—every medical marijuana patient could be screened out by a facially-neutral drug test." *Callaghan*, 2017 WL 2321181, at *9 (emphasis added).

11

the adverse action taken in this case. The Court finds that these arguments involve a strained reading of *Palmiter* and *Kopinetz*, discussed above, as Defendant's proffered bases, a positive drug test and failure to provide information on Plaintiff's medical marijuana prescription, are inextricably connected to Plaintiff's cardholder status. Defendant's reliance on *Reynolds* is also seemingly misplaced, as another district judge in the Eastern District of Pennsylvania interpreted *Reynolds* to provide that, where a plaintiff pleads that adverse action was taken on the basis of legal medical marijuana *use*, the plaintiff had sufficiently pled discrimination under the MMA on the basis of cardholder status.[3] *See DellaVecchio v. Cleveland-Cliffs, Inc.*, No. CV 22-4932, 2023 WL 3727001, at *4 (E.D. Pa. May 30, 2023) (citing *Reynolds* and denying a motion to dismiss because plaintiff pled facts that could plausibly give rise to entitlement to relief under the MMA where facts alleged, taken in a light most favorable to the plaintiff, suggested that "Defendant, on notice that Plaintiff had a prescription for medical marijuana and had renewed that prescription and obtained a newly-valid card, denied Plaintiff employment due to a positive drug test citing a hazy 'policy' *that does not appear to accommodate the lawful use of marijuana as permitted by the [MMA]*, thereby discriminating against anyone who was protected under the [MMA]." (emphasis added)).

Defendant also asserts that Plaintiff's failure to provide the requested physician certifications respecting Plaintiff's medical marijuana prescription and how his prescription might impact his ability to perform certain potential employment tasks justifies Defendant's rescission of Plaintiff's offer of employment, and that Plaintiff thus cannot state a claim under the MMA.

---

[3] It bears noting that *Reynolds* largely turned on the employer's lack of knowledge that the employee was a registered medical marijuana patient at the time the employer made the decision to terminate the employee. *Reynolds*, 567 F. Supp. 3d at 560. In this case, Plaintiff has alleged that he informed Defendant of his status as a certified medical marijuana cardholder before his offer of employment was rescinded. For this reason, the Court agrees with Plaintiff that *Reynolds* is distinguishable.

Reply 8-9, ECF No. 18.  Quite simply, such an assertion fails to accept the facts alleged in the Amended Complaint as true.  Plaintiff has pled that his position with Defendant would not have involved "operating heavy machinery nor driving, climbing ladders, walking on scaffolding, etc." Am. Compl. ¶ 22, ECF No. 13.  Taking that assertion as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff states a plausible claim that it was his cardholder status, and not his failure to provide certifications that Plaintiff's use of marijuana outside of the workplace would not impair him in the driving of a vehicle or in conducting safety sensitive career tasks in the construction industry during work hours, was the reason for the rescision of his offer of employment.[4]  Without discovery into the nature of the position at issue, and the impact THC levels from off-site, after-hours marijuana use might have on Plaintiff in performing his job functions, the Court cannot hold that Plaintiff fails to state an MMA claim in this matter.

      The Court does not suggest that an employer per se violates the MMA for taking adverse employment action in response to a failed drug test for marijuana.  An employee must be able to perform the essential functions of the job he has been hired to perform, subject to the requirements and prohibitions set forth in the MMA.  Of course, and as noted above, the MMA does not require accommodation of an employee who uses or is under the influence of marijuana on work premises or during work hours when that employee's conduct falls below the standard of care normally accepted for their position.  That said, in this case, Plaintiff asserts that he was qualified to perform the essential functions of his job, that he offered not to use marijuana in any way during work hours or on work premises, and that his offer of employment was rescinded simply for his use of prescription medical marijuana outside work hours and off work premises, and, thus, based upon his status as a medical marijuana cardholder.  These assertions, in this Court's estimation, involve

---

[4] The Court notes that the language: "safety sensitive career tasks in the construction industry" is unquestionably vague and is apparently quoted from an email sent by Defendant.

13

questions of fact that are simply unresolvable at this stage of the proceedings and without the benefit of discovery into the employment position at issue and the impact marijuana use outside of work hours and off work premises might pose to Plaintiff's ability to do his job. Construing the facts in a light most favorable to Plaintiff, Plaintiff has sufficiently pled that his status as a medical marijuana cardholder was the basis for Defendant's decision to rescind Plaintiff's offer of employment. *See Kopinetz*, 315 A.3d at 144. Accordingly, Defendant's Motion to Dismiss will be denied as to Count I.

### B.  PHRA Claim (Count II)

With respect to Plaintiff's failure to accommodate claim under the PHRA, Defendant again argues that Plaintiff has essentially pled himself out of court. Plaintiff's PHRA claim relies on an assertion that Defendant did not engage in an interactive process with Plaintiff to discuss reasonable accommodations before taking adverse employment action against him. Am. Compl. ¶¶ 37-38, ECF No. 13. Defendant contends that, notwithstanding the fact that Plaintiff has pled a viable basis for Defendant's rescission of Plaintiff's employment offer, i.e., the failed drug test, Plaintiff has pled facts that, even when construed in a light most favorable to Plaintiff, establish that he cannot plausibly allege that Defendant failed to engage in an interactive process to discuss reasonable accommodations before rescinding Plaintiff's offer of employment. Br. in Supp. 9-10, ECF No. 13. More specifically, Defendant argues:

> In the instant case, upon notifying Defendant of his alleged disabilities and his use of marijuana to treat those disabilities, the Company engaged in the interactive process to determine whether – despite the failed drug screen – Plaintiff might nonetheless provide doctor's certification that his prescribed marijuana use would not render him unable to perform essential functions of his position. . . . Plaintiff['s] health care provider could not – or would not – make such a certification. Instead, Plaintiff asked his prospective employer to take him at his word that he had expressed a "commitment to safe use" (a vague, undefined term). Thereafter, Plaintiff allegedly offered to sign an agreement to "refrain from any/all cannabis usage during business (or scheduled work) hours and any/all times not within these

14

> hours in which [he] potentially could find [himself] under the influence following prior such usage." At no time during this process, however, did Plaintiff propose any accommodation which did not involve his continued use of marijuana to allegedly treat his disabilities during his employment term with Defendant.

*Id.* at 10-11 (citations omitted) (emphasis omitted).

Defendant argues that Plaintiff, essentially, asserts that his PHRA disability is marijuana use, and that Plaintiff is not entitled to an accommodation for that use because the PHRA explicitly defines a disability to exclude the current, illegal use of a controlled substance, as defined by the federal Controlled Substance Act ("CSA").[5] Br. in Supp. 11, ECF No. 16. In concluding, Defendant maintains that "[t]he statutory language clearly provides that the use of medical marijuana – whether or not legally permissible in Pennsylvania – does not entitle Plaintiff to accommodation or protection under the [PHRA] based on that use," and argues in the alternative that:

> To the extent that Plaintiff's claims for failure to accommodate arise not from the marijuana use but from the asserted diagnoses themselves, the Amended Complaint woefully fails to assert any facts plausibly establishing that he sought and was denied reasonable accommodation for any disability, independent of his request that he be granted an exception to use of medical marijuana.

*Id.* at 14 (emphasis omitted).

The PHRA provides: "[i]t shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . . [f]or any employer because of the . . . non-job related handicap or disability . . . of any individual . . . to refuse to hire or employ . . . or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of

---

[5] While the Court acknowledges medical marijuana's legality under Pennsylvania state law, as well as recent developments respecting possible rescheduling of marijuana under federal law, it notes that, "currently, use of marijuana is always illegal under federal law given its status as a Schedule I controlled substance." *Bloch v. U.S. Dep't of Hous. & Urb. Dev.*, No. 2:23-CV-1660-NR, 2024 WL 3029135, at *7 (W.D. Pa. June 17, 2024).

15

employment . . . if the individual . . . is the best able and most competent to perform the services required." 43 Pa. Stat. Ann. § 955(a). "[T]he same legal standard that applies to the [Americans with Disabilities Act ("ADA")] applies equally to disability discrimination claims under the PHRA." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500 (3d Cir. 2010). "Under the ADA, '[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Andrews v. Highmark Health*, No. 2:22-CV-917, 2022 WL 14672734, at *5 (W.D. Pa. Oct. 25, 2022) (quoting 41 U.S.C. § 12112(a)).

"To plead a prima facie claim of failure to accommodate, a plaintiff must allege that '(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated.'" *Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 316 (E.D. Pa. 2020) (quoting *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017)). At the motion to dismiss stage, "a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, No. 08–207, 2008 WL 2312671 (W.D.Pa. June 4, 2008)). With respect to reasonable accommodations, the United States Court of Appeals for the Third Circuit has explained:

> The ADA's regulations state that: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). Similarly, the EEOC's interpretive guidelines provide that: "Once a

16

>qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999).

Having reviewed the authorities cited by the parties, the Court is constrained to conclude that the Commonwealth Court of Pennsylvania's holding in *Harrisburg Area Cmty. Coll. v. Pennsylvania Hum. Rels. Comm'n*, 245 A.3d 283, 285 (Pa. Commw. Ct. 2020) ("HACC") forecloses a claim for failure to accommodate under the PHRA for the use of medical marijuana. In *HACC*, a nursing student who suffered from Post-Traumatic Stress Disorder and Irritable Bowel Syndrome asserted that she would be able to complete the essential components of the defendant college's nursing program, which included class work and clinical training, so long as she was granted the reasonable accommodation of being permitted to take her legally prescribed medical marijuana medication. *HACC*, 245 A.3d at 185. The Commonwealth Court explained that "the sole issue on appeal is whether the anti-discrimination provisions of [the] PHRA . . . require accommodation of [plaintiff's] lawful use of medical marijuana under the MMA." *Id.* at 286.

In reversing the Pennsylvania Human Relations Commission's decision denying a motion to dismiss filed by the defendant college, the Commonwealth Court explained that the CSA, which categorizes marijuana as a schedule I controlled substance that has no currently accepted medical use, is expressly referenced in the PHRA. *HACC*, 245 A.3d at 289; 293-94; 298. The Commonwealth Court further noted that the PHRA also incorporates the CSA's provisions and prohibitions, which prohibit the use of schedule I controlled substances, including medical marijuana. *Id*. The Commonwealth Court also noted that the MMA made no reference to the PHRA, and it further rejected plaintiff's argument that the MMA amended the PHRA. It explained

17

that the legislature did not, following the passage of the MMA, amend the language of the PHRA to require accommodation of medical marijuana use. *Id.* at 292. In light of the same, the Commonwealth Court ultimately concluded that plaintiff was not a qualified individual with a disability under the PHRA, and that the PHRA did not require accommodation of the plaintiff's lawful use of medical marijuana. *Id.* at 298; *see also Palmiter v. Commonwealth Health Sys., Inc.*, 276 A.3d 221 at *7 (Pa. Super. 2022)[6] (unpublished, non-precedential Superior Court of Pennsylvania decision affirming dismissal of PHRA failure to accommodate claim, relying on HACC and holding that the plaintiff "had not shown she was a qualified individual with a disability under the PHRA."); *Zimmerman v. Health Network Labratories, L.P.*, No. 5:24-CV-01142, 2025 WL 457100, at *5 (E.D. Pa. Feb. 10, 2025) ("Accordingly, this Court concludes that employees properly prescribed marijuana in compliance with Pennsylvania law, who then experience adverse employment determinations based on that use, are not 'qualified individuals' contemplated [in the ADA].").

The Court recognizes that it is not bound by the Commonwealth Court's decision in *HACC*. That said, *HACC*, a decision of a Pennsylvania court of appeals interpreting Pennsylvania law, does provide guidance as to the issues presented herein, and it is the only case cited by either party to address these issues in depth. Further, this Court is not free to impose its own view of what state law should be in considering Plaintiff's PHRA claim. *HACC* is sufficiently factually analogous, and it involves interpretation of the relevant provisions of the PHRA at issue herein. While Plaintiff may disagree with *HACC*, this Court finds that *HACC* forecloses Plaintiff's claim

---

[6] This *Palmiter* is a different case than the one cited above, though it involves the same parties and the same operative facts. Ms. Palmiter pursued her MMA claim in one state court action and her PHRA claim in a separate state court action. Importantly, Ms. Palmiter's MMA claim survived preliminary objections and a subsequent appellate interlocutory review of the order overruling those preliminary objections, while her PHRA claim was dismissed by an order that was eventually affirmed by the Superior Court.

under the PHRA for failure to accommodate related to his legal use of medical marijuana. The sole issue on appeal in *HACC* was whether the anti-discrimination provisions of the PHRA require accommodation of an individual's lawful use of medical marijuana. In ruling against the PHRC and the student in *HACC*, the Commonwealth Court of Pennsylvania answered that question in the negative. Accordingly, Plaintiff cannot state a claim for failure to accommodate under the PHRA for Defendant's failure to accommodate his medical marijuana use. The Court finds that amendment as to Plaintiff's PHRA claim would be futile, and, accordingly, Count II will be dismissed with prejudice.

### IV. Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss will be granted in part and denied in part. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: March 7, 2025

cc: All counsel of record